Daniel S. Brome, CA State Bar No. 278915
Matthew C. Helland, CA State Bar No. 250451
dbrome@nka.com
helland@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Michele R. Fisher, MN State Bar No. 303069 (admitted *pro hac vice*)
fisher@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

Charles Scalise, TX State Bar No. 24064521 (admitted *pro hac vice*)
charles@rosslawpc.com
ROSS SCALISE LAW GROUP, P.C.
1104 San Antonio Street
Austin, TX 78701
Telephone: (510) 270-2614
Facsimile: (510) 474-5306

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jordan Chalmers, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DSSV, Inc., d/b/a Brightwheel,<br><br>Defendant. | Civil Case No.: 4:22-cv-08863-HSG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF FLSA SETTLEMENT**<br><br>Hearing Date: Thursday, Oct. 24, 2024[1]<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor<br>Judge: Honorable Haywood S. Gilliam, Jr. |

---

[1] The parties respectfully request approval on this motion on the briefing, rather than at a hearing.

<u>**NOTICE OF UNOPPOSED MOTION AND MOTION**</u>

PLEASE TAKE NOTICE that, on Thursday, October 24, 2024, at 2:00 p.m. in Courtroom 2 of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, before the Honorable Haywood S. Gilliam, Jr., (or by approval on the briefing without a hearing), Plaintiff Jordan Chalmers, on behalf of himself and others similarly situated ("Plaintiffs"), will move for approval of the parties' settlement under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

Plaintiffs seek Court approval of the FLSA settlement, as it reflects a reasonable compromise of a *bona fide* dispute over Plaintiffs' entitlement to overtime. Plaintiffs also request approval for payment of attorneys' fees and costs and a Plaintiff incentive award.

The Motion is supported by the Notice of Motion and Motion, the Memorandum and Points and Authorities, the declaration of counsel and attached exhibits, and such other evidence or argument as may be presented to the Court.  A Proposed Order is submitted with this Motion.

Date:   September 16, 2024                    **NICHOLS KASTER, PLLP**

By: <u>*Michele R. Fisher*</u>

*Attorney for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION. ................................................................................................. 1

I.      PROCEDURAL AND FACTUAL HISTORY ............................................... 1

    A.  The Litigation ............................................................................... 1

    B.  Settlement Negotiations and Agreement................................................... 3

ANALYSIS ...........................................................................................................

II.     THE COURT SHOULD APPROVE THE FLSA SETTLEMENT ............... 5

    A.      A One-Step Approval Process is Appropriate Here .............................. 5

    B.      The FLSA Settlement Warrants Approval .......................................... 6

        1.    *Range of Recovery* ........................................................... 7

        2.    *Stage of Proceedings and Recovery*.................................... 8

        3.    *Litigation Risks* ................................................................ 8

        4.    *Scope of Release* ............................................................... 9

        5.    *View of Counsel and Plaintiffs* ......................................... 10

        6.    *Fraud and Collusion* ....................................................... 10

III.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES, COSTS, NAMED PLAINTIFF SERVICE PAYMENT, AND CY PRES..... 11

    A.  The Requested Attorneys' Fees are Reasonable .................................... 11

        1.    *Hours Reasonably Expended* ........................................... 12

        2.    *Plaintiffs' Counsel's Hourly Rates are Reasonable*.......................... 14

    B.  The Court Should Approve the Requested Costs ................................... 18

    C.  The Court Should Approve the Requested Service Payment.................. 18

    D.  The Court Should Approve the *Cy Pres* Designee ................................ 20

CONCLUSION ..................................................................................................... 20

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASE LAW</u>

3

*Aguirre v. Custom Image Pros LLC*
2023 WL 5932805 (D. Ariz. Sept. 12, 2023) .................................................. 12

4

5

*A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) ...................................... 12

6

*Amador v. City of Ceres*
2019 WL 935496 (E.D. Cal. Feb. 26, 2019) .................................................. 11

7

8

*Ambrosino v. Home Depot U.S.A, Inc.*
2014 WL 3924609 (S.D. Cal. Aug. 11, 2014)................................................... 6

9

*Amsel v. Gerrard*
2023 WL 2561153 (D. Nev. Mar. 17, 2023).................................................. 12

10

11

*Barbosa v. Cargill Meat Sols. Corp.*
297 F.R.D. 431 (E.D. Cal. 2013).................................................................. 15

12

13

*Beidleman v. City of Modesto*
2018 WL 1305713 (E.D. Cal. Mar. 13, 2018)................................................. 9

14

15

*Bellinghausen v. Tractor Supply Co.*
306 F.R.D. 245 (N.D. Cal. 2015) ..........................................................15, 17

16

*Bisaccia v. Revel Sys. Inc.*
2019 WL 3220275 (N.D. Cal. July 17, 2019) ............................................. 15

17

18

*Blotzer v. L-3 Commc'ns Corp.*
2012 WL 6086931 (D. Ariz. Dec. 6, 2012).................................................... 9

19

20

*Boyd v. Bank of Am. Corp.*
2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................................. 20

21

22

*Boyce v. Indep. Brewers United Corp.*
223 F. Supp. 3d 942  (N.D. Cal. 2016) ......................................................... 9

23

*Campanelli v. Hershey Co.*
2011 WL 3583597 (N.D. Cal. May 4, 2011) ...............................................5, 6

24

25

*Carter v. XPO Logistics, Inc.*
2019 WL 5295125 (N.D. Cal. Oct. 18, 2019)............................................... 19

26

27

*Castro v. Paragon Indus., Inc.*
2020 WL 1984240 (E.D. Cal. Apr. 27, 2020)...............................................6, 7

28

PLAINTIFFS' MOTION FOR APPROVAL OF FLSA SETTLEMENT 4:22-CV-08863-HSG

*Covillo v. Specialtys Café*
2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ................................................................... 10

*Dahl v. Bay Power Inc.*
2021 WL 2313388 (N.D. Cal. May 28, 2021) .........................................................11, 12

*Dashiell v. Cnty. of Riverside*
2018 WL 3629915 (C.D. Cal. July 19, 2018) ...........................................................5, 6

*Deaver v. Compass Bank*
2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ............................................................ 19

*Deluca v. Farmers Ins. Exch.*
386 F. Supp. 3d 1235  (N.D. Cal. 2019) ....................................................................... 9

*Dudley v. TrueCoverage LLC*
2019 WL 3099661 (C.D. Cal. Mar. 22, 2019) ............................................................ 11

*Estorga v. Santa Clara Valley Transp. Auth.*
2020 WL 7319356 (N.D. Cal. Dec. 11, 2020) ........................................................... 12

*Galeener v. Source Refrigeration & HVAC, Inc.*
2015 WL 12977077 (N.D. Cal., Aug. 21, 2015) ......................................................... 19

*Gong-Chun v. Aetna Inc.*
2012 WL 2872788 (E.D. Cal. July 12, 2012)........................................................16, 19

*Greko v. Diesel U.S.A., Inc.*
2013 WL 1789602 (N.D. Cal. Apr. 26, 2013)............................................................. 20

*Hanigan v. OpSec Sec., Inc.*
2023 WL 6878762 (D. Idaho Oct. 18, 2023) .............................................................. 12

*Hefler v. Wells Fargo & Co.*
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................................ 15

*Hensley v. Eckerhart*
461 U.S. 424 (1983)...................................................................................................... 13

*Hernandez v. Merrill Lynch & Co., Inc.*
2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013).............................................................. 17

*Hose v. Wash. Inventory Serv.*
2020 WL 3606404 (S.D. Cal. July 2, 2020)................................................................. 16

*In re Pep Boys Overtime Actions*
2008 WL 11343369 (C.D. Cal. Nov. 12, 2008) ........................................................... 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ............................................... 15

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig*
364 F. Supp. 2d 994 (D. Minn. 2005)....................................................... 18

*Jeffcoat LLC v. Director, Office of Workers' Comp. Programs*
553 F.3d 487 (7th Cir. 2009)................................................................. 16

*Jones v. Agilsys, Inc.*
2014 WL 2090034 (N.D. Cal. May 19, 2014) ........................................... 7

*Jones v. Agilsys, Inc.*, 2014 WL 2090034
(N.D. Cal. May 19, 2014) ...................................................................... 7

*Kahekili Seto v. Cnty. of San Joaquin*
2022 WL 3357504 (E.D. Cal. Aug. 14, 2022) ........................................... 5

*Kapolka v. Anchor Drilling Fluids USA, LLC*
2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) ............................................ 17

*Kelley v. City of San Diego*
2021 WL 424290 (S.D. Cal. Feb. 8, 2021) ............................................... 16

*Kerzich v. Cnty. of Tuolumne*
335 F. Supp. 3d 1179 (E.D. Cal. 2018)................................................... 12

*Kudatsky v. Tyler Techs., Inc.*
2021 WL 5356724 (N.D. Cal. Nov. 17, 2021) .......................................... 16

*Lee v. The Timberland Co.*
2008 WL 2492295 (N.D. Cal. June 19, 2008) ........................................... 6

*Lopez v. Mgmt. & Training Corp.*
2020 WL 1911571 (S.D. Cal. Apr. 20, 2020) ........................................... 17

*Lusby v, GameStop Inc*
2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ........................................... 19

*Lynn's Food Stores, Inc. v. United States*
679 F.2d 1350 (11th Cir. 1982)............................................................... 6

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*
 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017) .......................................... 16

*McKeen-Chaplin v. Provident Sav. Bank, FSB*
2018 WL 3474472 (E.D. Cal. July 19, 2018)............................................. 5

PLAINTIFFS' MOTION FOR APPROVAL OF FLSA SETTLEMENT 4:22-CV-08863-HSG

*Mckeen-Chaplin v. Franklin American Mortg. Co.*
2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) ............................................................... 10

*Missouri v. Jenkins v. Agyei*
491 U.S. 274 (1989) ...................................................................................................... 15

*Murphy v. City of El Cajon*
2019 WL 3936143 (S.D. Cal. Aug. 18, 2019) .............................................................. 16

*Nelson v. Avon Prods. Inc.*
2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ..................................................... 10, 18, 19

*Nen Thio v. Genji, LLC*
14 F. Supp. 3d 1324 (N.D. Cal. 2014) ........................................................................9, 11

*Noroma v. Home Point Fin. Corp.*
2019 WL 5788658 (N.D. Cal. Nov. 6, 2019) ............................................................... 19

*Prim v. Ensign United States Drilling, Inc*
2019 WL 4751788 (D. Colo. Sep. 30, 2019) ............................................................... 17

*Quiroz v. City of Ceres*
2019 WL 1005071 (E.D. Cal. Mar. 1, 2019) .................................................................. 8

*Radcliffe v. Experian Info. Sols., Inc.*
714 F.3d 1157 (9th Cir. 2013) ...................................................................................... 18

*Rutti v. Lojack Corp.*
2012 WL 3151077 (C.D. Cal. July 31, 2012) ..........................................................17, 19

*Saleh v. Valbin Corp.*
2018 WL 6002320 (N.D. Cal. Nov. 15, 2018) ............................................................... 5

*Satchell v. Fed. Express Corp.*
2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ............................................................... 10

*Seguin v. Cnty. of Tulare*
2018 WL 1919823 (E.D. Cal. Apr. 24, 2018) ......................................................9, 10, 11

*Selk v. Pioneers Mem'l Healthcare Dist.*
159 F. Supp. 3d 1164 (S.D. Cal. 2016) ....................................................... 5, 6, 12, 19

*Seto v. Cnty. of San Joaquin*
2022 WL 3357504 (E.D. Cal. Aug. 14, 2022) ............................................................... 5

*Slaughter v. Sykes Enterprises*
2019 WL 529512 (D. Colo. Feb. 11, 2019) ................................................................. 19

PLAINTIFFS' MOTION FOR APPROVAL OF FLSA SETTLEMENT 4:22-CV-08863-HSG

1

2

*Slezak v. City of Palo Alto*
2017 WL 2688224 (N.D. Cal. June 22, 2017) .......................................................7, 10, 18

3

*Talavera v. Sun-Maid Growers of Cal.*
2020 WL 2195115 (E.D. Cal. May 6, 2020)..............................................................8, 18

4

5

*Taylor v. FedEx Freight, Inc.*
2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ............................................................... 19

6

7

*Yue Zhou v. Wang's Rest.*
2007 WL 172308 (N.D. Cal. Jan. 17, 2007) ................................................................... 6

8

*Yuzary v. HSBC Bank USA, N.A.*
2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................................................................. 17

9

10

STATUTES

11

29 U.S.C. § 216(b) ............................................................................................................ 18

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR APPROVAL OF FLSA SETTLEMENT 4:22-CV-08863-HSG

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Jordan Chalmers, on behalf of himself and all others similarly situated, seeks approval of a $380,000.00 Fair Labor Standards Act ("FLSA") collective action settlement covering all 63 Plaintiffs in this case who worked for Defendant DSSV, Inc., d/b/a Brightwheel as inside sales representatives, sales development representatives, and account executives (collectively, sales employees). Plaintiffs alleged that Defendant failed to pay them an overtime premium for hours worked over 40 in a workweek because Defendant classified them as exempt.

All 63 Plaintiffs signed settlement Releases—an indication that the settlement is a fair and reasonable resolution of their claims. The settlement brings an efficient resolution where there is a *bona fide* dispute as to whether Defendant owes Plaintiffs for their overtime work and where if litigation continued, the parties would need to conduct discovery, brief dispositive motions, and likely proceed to trial. Settlement provides substantial value now, with Plaintiffs receiving 2.5 hours per week of unpaid overtime at a 1.5 overtime multiplier, for a three-year statute of limitations period, even after accounting for attorneys' fees and costs and a Named Plaintiff service payment. The settlement was reached with the assistance of a former federal magistrate judge, the Honorable Carla Woehrle, and Plaintiffs used Defendant's payroll data to calculate damages. The settlement avoids the risk and expense of further litigation, and the parties respectfully request that the Court approve it and dismiss the case with prejudice.

## ANALYSIS

## I.     PROCEDURAL AND FACTUAL HISTORY

### A.     The Litigation

On December 15, 2022, Plaintiff Chalmers filed this putative collective action against Defendant to recover overtime pay under the FLSA. (Compl., ECF No. 1.) He worked for Defendant as an inside sales representative ("ISR") in Texas from approximately May 2021 to May 2022. (*Id.* ¶ 9.) Defendant is a California company that is in the business of preschool and childcare management software that integrates automatic billing and payments, allows for real-time communication and photo sharing, and enables administrators to manage their business with

enrollment, reporting, and online bill pay.  (*Id.* ¶ 12.)  Defendant employed sales employees who are responsible for cultivating Defendant's customers and selling its software subscriptions.  (*Id.* ¶¶ 2, 19.)

On January 18, 2023, Defendant filed a Motion to Transfer Venue to the Western District of Texas.  (Mot. to Transfer, ECF No. 12.)  Plaintiff opposed.  (Opp. to Mot. to Transfer, ECF No. 28.)  On May 28, 2023, Defendant answered, denying liability and asserting various affirmative defenses, including that Plaintiff and others similarly situated were administrative employees exempt from the FLSA's overtime protections.  (Ans., ECF No. 47.)

In June 2023, while Defendant's Motion to Transfer Venue was pending, the parties decided to attend mediation; the Court stayed the case management conference and hearing on the Motion to Transfer.  (Stip. to Continue & Order, ECF Nos. 48, 50.)  In July 2023, the parties attended mediation with private mediator William Lemons, but did not reach a resolution. (Jt. Statement Regarding Mediation, ECF No. 54.)  On September 22, 2023, the Court denied Defendant's Motion to Transfer Venue.  (Order, ECF No. 62.)  On October 24, 2023, the Court held an initial case management conference, directing Plaintiff to file a Motion for Distribution of Judicial Notice.  (Minute Entry, ECF No. 64.)

On November 27, 2023, Plaintiff filed the Motion for Distribution of FLSA Notice.  (Motion, ECF No. 68.)  Defendant opposed the Motion.  (Opp. to Motion for FLSA Notice, ECF No. 71.)  On February 7, 2024, the Court authorized an administrator to send notice of this FLSA case to Defendant's current and former sales employees who worked at any time since February 7, 2021, who Defendant classified as exempt.  (Order on Notice, ECF No. 81.)  On February 26, 2024, the administrator distributed notice by mail, email, and text to 276 eligible sales employees.  (*See* Fisher Decl. ¶ 2.)  In total, 65 individuals joined the case to make a claim for overtime pay.[2]  (Consent Forms, ECF Nos. 1-1; 1-2; 8-1; 11-1(3); 15-1; 17-1; 25-1(2); 27-1; 33-1; 42-1; 46-1; 51-1; 52-1; 53-1; 59-1; 82-1; 83-1(25); 84-1; 85-1(2); 86-1; 89-1; 90-1; 91-1(2); 92-1(9); 93-1; 94-1; 95-1; 101-1.)

---

[2] Two individuals withdrew their consent to join forms. (*See* Withdrawal Forms, ECF No. 108-1.)

Following the distribution of notice, in April 2024, Plaintiff filed a Motion for Corrective Notice. (Motion, ECF No. 96.) Defendant opposed, and the Court denied the Motion. (Opposition, ECF No. 105; Order, ECF No. 107.)

In February 2024, Plaintiffs served Defendant with interrogatories, requests for production of documents, and a Notice of Deposition under Federal Rule of Civil Procedure 30(b)(6), but the parties agreed to stay that discovery while they attended mediation in June 2023. (Stip. & Order Staying Discovery Pending Mediation, ECF No. 88.)

**B.      Settlement Negotiations and Agreement**

Prior to mediation, Defendant produced payroll data for all Plaintiffs along with their dates of employment and job title. (Fisher Decl. ¶ 3.) Plaintiffs' Counsel used that data, along with Plaintiffs' estimates of alleged overtime worked, to calculate alleged damages. (*Id.*) Since Defendant started paying sales employees overtime after January 1, 2023, Plaintiffs did not calculate damages post-reclassification. (*Id.*) On June 26, 2024, the parties attended private mediation with the Honorable Carla Woehrle (ret.), and negotiations were at arms' length and in good faith. (*Id.* ¶ 4.) Following mediation, the parties, assisted by Judge Woehrle, reached a settlement totaling $380,000. (*Id.*) On July 12, 2024, the parties finalized a written settlement agreement. (Jt. Status Update, ECF No. 112.) The agreement provides for $186,654.16 to be distributed to Plaintiffs based on the pro rata number of workweeks each Plaintiff worked for Defendant; $190,345.84 for Plaintiffs' Counsel for attorneys' fees and costs;[3] and $3,000 for a service payment to Plaintiff Chalmers. (Settlement Agmt., Ex. 1.)

The negotiated settlement provides Plaintiffs with pay for 2.5 hours of overtime each week they worked using a 1.5 overtime multiplier, for three years back from the date they joined the case (the maximum possible recovery period under the FLSA). (Fisher Decl. ¶ 5.) Those who worked after Defendant reclassified the positions in January 2023 were given an additional $500 to account

---

[3] As described in more detail below, Plaintiffs' fees and costs by Nichols Kaster, PLLP are approximately $308,969.58 to date and will continue to increase with administration of the settlement. (Fisher Decl. ¶ 12.)

1   for that timeframe.  (*Id.*)  The average amount allocated among Plaintiffs is $3,010.38.  (*Id.*; *see*

2   Allocations, Ex. 2.) On average, Plaintiffs only worked for Defendant for 10.25 months (41

3   workweeks) during the relevant time frame (three years back from when they filed their consent form

4   up to the reclassification).  (Fisher Decl. ¶ 5.)

5        Each Plaintiff was notified in writing of the settlement, their individual settlement offer

6   amount and how it was calculated, the amount to be distributed to Plaintiffs, the amount to be

7   distributed to Plaintiffs' Counsel for attorneys' fees and costs, and the service payment amount.  (*Id.*

8   ¶ 6.)  They were also provided with a Release of Claims form to sign to participate in the settlement.

9   (*Id.*)  Plaintiffs were informed that they could contact Plaintiffs' Counsel if they had questions and

10  given contact information for Plaintiffs' Counsel, including a phone number, website information,

11  and mailing address. (*Id.*)

12       The Release is limited to only those claims that could have been alleged in the Complaint and

13  the timeframe is limited to three years back from the filing of the Complaint through the date of

14  approval of this settlement. (Plaintiff Release, Ex. B to Settlement Agmt., Ex. 1.) Specifically, it

15  states that Plaintiffs release Defendant from:

16       all claims, causes of action, theories, primary rights, and liabilities asserted in the Complaint
         … as well as any claims, causes of action, theories, primary rights, or liabilities under any
17       state, federal or local law that could have been asserted based on the same or substantially
         similar factual predicate as the claims alleged in the Complaint, to the fullest extent permitted
18       by law.

19

20  (*Id.*; Signed Releases, Ex. 3.) In consideration for his $3,000 service payment, Named Plaintiff

21  Chalmers releases:

22       all claims, demands, rights (including primary rights), liabilities or causes of action of every
         nature and description whatsoever, known or unknown, asserted or that might have been
23       asserted, whether in tort, contract, common law, constitution, public policy or for violation
         of any federal, state, or local statute, rule, regulation, ordinance or law arising out of, relating
24       in any way to, or in connect with any act or omission … committed or omitted prior to
         approval of this settlement.
25

26  (Chalmers Release, Ex. C to Settlement Agmt., Ex. 1.)  The Settlement Agreement calls for the claims

27  of those who sign a Release to be dismissed with prejudice.  (Settlement Agmt. ¶ 4, Ex. 1.)

28

If the Court grants approval of the settlement, once the period for any appeal has passed without any appeal (or if one is filed, the appeal has been dismissed or there is a final order on the appeal), Defendant will issue Plaintiffs' settlement checks and the check for Plaintiffs' Counsel's attorneys' fees and costs within 30 days. (Settlement Agmt. ¶¶ 7–8, Ex. 1.)  Plaintiffs have 90 days to cash their checks and if any remain uncashed, Defendant will donate those funds to Legal Aid Foundation of Los Angeles. (*Id.* ¶ 8.)  Half of each Plaintiffs' settlement payment will be taxed as wages for which Defendant will issue a tax form W-2 and the other half as liquidated damages, for which Defendant will issue a tax form 1099. (*Id.* ¶ 9.)

## **ARGUMENT**

## II. **THE COURT SHOULD APPROVE THE FLSA SETTLEMENT**

### A. **A One-Step Approval Process is Appropriate Here.**

This case has already been "certified" as notice was distributed in February 2024 to all sales employees who were eligible to join, employees had the opportunity to join, those who joined were informed in writing about the details of the settlement and given the choice whether to participate in the settlement, all 63 Plaintiffs voluntarily accepted the settlement by signing a Release, and as such, a one-step settlement approval process is appropriate. *See*, *e.g.*, *Dashiell v. Cnty. of Riverside*, 2018 WL 3629915, at *1 (C.D. Cal. July 19, 2018); *Campanelli v. Hershey Co.*, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011); *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 2018 WL 3474472, at *1 (E.D. Cal. July 19, 2018); *Saleh v. Valbin Corp.*, 2018 WL 6002320, at *4 (N.D. Cal. Nov. 15, 2018); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1182 (S.D. Cal. 2016). Under the one-step approval process, this court should still review this FLSA settlement for fairness. *Kahekili Seto v. Cnty. of San Joaquin*, 2022 WL 3357504, at *2 (E.D. Cal. Aug. 14, 2022) ("If FLSA claims are settled, the settlement must be approved by either the Secretary of Labor or a federal district court.") (quotation omitted).

### B. **The FLSA Settlement Warrants Approval.**

The decision of whether to approve a collective action settlement lies within the trial court's discretion.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). To approve an FLSA settlement, a court must determine it is a "fair and reasonable resolution of a bona

5

fide dispute" of the FLSA claims. *Id.* at 1355; *Dashiell*, 2018 WL 3629915, at *2; *Campanelli*, 2011 WL 3583597, at *1; *Ambrosino v. Home Depot U.S.A, Inc.*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Lee v. The Timberland Co.*, 2008 WL 2492295, *2 (N.D. Cal. June 19, 2008); *Yue Zhou v. Wang's Rest.*, 2007 WL 172308, at *2 (N.D. Cal. Jan. 17, 2007). A bona fide dispute exists where there are legitimate questions about the existence and extent of Defendant's FLSA liability; there must be some doubt that the plaintiffs would succeed on the merits through litigation of their FLSA claims. *Selk*, 159 F. Supp. 3d at 1172–73. "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Id.* Court approval is favored "to promote the policy of encouraging settlement of litigation" where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

After a district court is satisfied that a bona fide dispute exists, it must then determine whether a settlement is fair and reasonable. *Selk*, 159 F. Supp. 3d at 1173. While recognizing that Rule 23 class action principles do not necessarily apply in FLSA collective actions, courts in this district have nevertheless borrowed from Rule 23 approval factors to determine whether an FLSA settlement is "fair, reasonable, and adequate." *See id.*; *Dashiell*, 2018 WL 3629915, at *3; *Castro v. Paragon Indus., Inc.*, 2020 WL 1984240, at *6 (E.D. Cal. Apr. 27, 2020). Courts in this district often consider the following factors when evaluating settlements under FLSA: (1) the plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *Dashiell*, 2019 WL 3629915, at *3. In determining whether to approve an FLSA settlement, courts in the Ninth Circuit have adopted a totality of the circumstances approach that emphasizes the context of the case, and a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA. *Castro*, 2020 WL 1984240, at *7; *Slezak v. City of Palo Alto*, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).

1                    1.     Range of Recovery

2          Using Plaintiffs' estimates of overtime hours they believed they worked each week (8.51

3   hours, on average), Plaintiffs calculated overtime damages, for the FLSA's two-year statutory period

4   (using a 1.5 overtime multiplier) to be $443,289.29, and $591,241.05 if Plaintiffs could prove

5   Defendant acted willfully in its alleged misclassification of Plaintiffs to justify a three-year FLSA

6   statutory period.  (Fisher Decl. ¶ 7.)  If Defendant were unable to show that its actions were in good

7   faith, the amount could potentially be doubled as liquidated damages, totaling $886,578.59 if a two-

8   year statutory is applied and $1,182,482.10 if a three-year statutory period is applied.  (*Id.*)

9          Under the proposed settlement, using a 1.5 overtime multiplier, Plaintiffs are getting 2.5 hours

10  of overtime each week they worked, for a full three-year statute of limitations period.  (*Id.*)  Plaintiffs

11  are receiving 31% of their alleged overtime pay ($591,241.05/$186,654.16), in a case where

12  Defendant claims they were exempt under the administrative, outside sales, retail sales, and/or highly

13  compensated exemptions and thus were not owed any overtime at all, and where Defendant contests

14  its actions were willful or not in good faith.  (*Id.*)  Further, Defendant contends that Plaintiffs'

15  overtime estimates exceed what Defendant's time records post-reclassification reflect (.5 overtime

16  hours per week on average), which indicates little to no overtime at all.  (*Id.*)  Even if Plaintiffs

17  prevailed, they would have needed to prove that Defendant's error was willful to obtain a third year

18  of FLSA damages and Defendant could avoid liquidated damages by showing its classification of

19  Plaintiffs as exempt was in good faith.  This settlement provides a fair recovery in a case where

20  victory was uncertain. *See Jones v. Agilsys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014)

21  (FLSA settlement constituting 30% to 60% of recoverable damages was a "tangible monetary

22  benefit").

23                   2.     Stage of Proceedings and Recovery

24         The court is also required to evaluate the stage of the proceedings and the amount of discovery

25  completed to ensure that the parties "carefully investigated the claims before reaching a resolution."

26  *Talavera v. Sun-Maid Growers of Cal.*, 2020 WL 2195115, at *7 (E.D. Cal. May 6, 2020) (quotation

27  omitted).  This factor weighs in favor of approval if the parties had sufficient information to make

28  an informed decision regarding settlement.  *Id.*

7

The parties gathered sufficient information to make an informed decision regarding settlement.  Prior to filing this case, Plaintiffs' Counsel thoroughly investigated the claims.  (Fisher Decl. ¶ 8.)  Plaintiff Chalmers assisted with that investigation by providing information about sales employees' job duties and pay, Defendant's company and background, and Defendant's policies and procedures.  (*Id.*) While the parties did not conduct formal discovery, before reaching a settlement, they had engaged in motion practice and submitted declarations and other exhibits in support of those motions.  (*Id.*) They also prepared for and attended two mediation sessions, where the parties further evaluated the claims and defenses.  (*Id.*)  Before mediation, Defendant provided payroll and time data and Plaintiffs' Counsel used it to calculate damages.  (*Id.*)  This is sufficient information to reach an appropriate settlement.

### 3.    Litigation Risks

"Courts favor settlement where there is a significant risk that litigation might result in a lesser recovery for the class or no recovery at all." *Quiroz v. City of Ceres*, 2019 WL 1005071, at *4 (E.D. Cal. Mar. 1, 2019) (quotation omitted).  If this case did not resolve, discovery would resume and the parties would spend time answering written discovery and taking and defending depositions, including Federal Rule of Civil Procedure 30(b)(6) and supervisor depositions.  The parties would have also conducted significant briefing on FLSA decertification and summary judgment as Defendant disputed that collective action certification was appropriate and that Plaintiffs were owed overtime compensation at all, asserting that Plaintiffs were exempt under the administrative, outside sales, retail sales, and/or highly compensated exemptions.

Even if Plaintiffs prevailed on exemptions, at trial Plaintiffs would still need prove the amount of overtime hours worked despite having no record of those hours, that Defendant's alleged misclassification was willful (to obtain three, rather than two, years of FLSA damages), the amount of damages, and that a 1.5 overtime multiplier was appropriate and the fluctuating workweek method (which uses a .5 multiplier) does not apply.  Importantly, the Ninth Circuit has not yet ruled retroactive application of the fluctuating workweek in misclassification cases and district courts have reached conclusions both ways on the issue.  *Compare Blotzer v. L-3 Commc'ns Corp.*, 2012 WL 6086931, at *10 (D. Ariz. Dec. 6, 2012) ("Application of the FWW method in a misclassification

case is contrary to the FLSA's rationale.") *with Deluca v. Farmers Ins. Exch.*, 386 F. Supp. 3d 1235, 1265 (N.D. Cal. 2019); *Boyce v. Indep. Brewers United Corp.*, 223 F. Supp. 3d 942, 949 (N.D. Cal. 2016) (rejecting use of FWW in calculating damages and collecting cases).  If litigation continued, the parties would have incurred additional costs, including that of discovery and depositions, summary judgment, decertification motions and hearings, preparing for and attending trial, and handling any subsequent appeals.  Under the proposed settlement, Plaintiffs can recover money now rather than waiting for prolonged litigation to conclude.  This settlement, which avoids the expense and uncertainty of further litigation, should be approved.

       4.   <u>Scope of Release</u>

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself" as an expansive release of claims "would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute." *Seguin v. Cnty. of Tulare*, 2018 WL 1919823, at *4 (E.D. Cal. Apr. 24, 2018) (quotations omitted).  Courts are hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case.  *Beidleman v. City of Modesto*, 2018 WL 1305713, at *4 (E.D. Cal. Mar. 13, 2018).

While Plaintiff Chalmers is subject to a broad general release, he received additional consideration for that release.  Whereas the Release that all other Plaintiffs signed is narrow, as it is limited in time to three years back from the filing of the Complaint and in scope as it only releases claims that were brought or could have been brought in the Complaint based on the same factual predicate.  This supports approval.  *See Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) (settlement did not have obvious deficiencies where release was acceptable because the claims were limited to those based on the facts set forth in the amended complaint); *but see McKeen-Chaplin v. Franklin American Mortg. Co.*, 2012 WL 6629608, at *1–5 (N. D. Cal. Dec. 19, 2012) (rejecting FLSA settlement that released defendant and others from any and all claims… whether known or unknown, arising from, relating to, or in any way connected with their employment or termination of employment).

1        5.     <u>View of Counsel and Plaintiffs</u>

2       "In determining whether a settlement is fair and reasonable, the opinions of counsel should

3 be given considerable weight both because of counsel's familiarity with the litigation and previous

4 experience with cases." *Seguin*, 2018 WL 1919823, at *5 (quotation omitted). Plaintiffs' Counsel

5 supports the settlement as a good result for the FLSA collective. Plaintiffs also support the result, as

6 evidenced by overwhelming support from all 63 Plaintiffs (100%) who voluntarily agreed to the

7 settlement by signing a Release. *See Covillo v. Specialtys Café*, 2014 WL 954516, at *6 (N.D. Cal.

8 Mar. 6, 2014) (37% participation "strongly favors approval"). The parties reached a settlement after

9 experienced counsel exchanged data and information necessary to evaluate the claims, performed a

10 detailed damages analysis, and reviewed the data and information considering the exemptions being

11 asserted. *See Nelson v. Avon Prods. Inc.*, 2017 WL 733145, at *4 (N.D. Cal. Feb. 24, 2017) (noting

12 that formal discovery is not required and finding class counsel was "in a strong position to evaluate

13 their case and conclude that settlement was the best way forward" where counsel had "obtained

14 Avon's payroll information for a portion of the Class").

15        6.     <u>Fraud or Collusion</u>

16       The likelihood of fraud or collusion is low when the settlement was reached through arm's-

17 length negotiations, facilitated by an impartial mediator. *Slezak*, 2017 WL 2688224, at *5. The

18 litigation history dispels any possibility that the settlement results from collusion, as the parties have

19 engaged in disputed motion practice, had one failed mediation, and only settled after a second attempt

20 at mediation. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007)

21 ("The assistance of an experienced mediator in the settlement process confirms that the settlement is

22 non-collusive."). Moreover, all Plaintiffs have been treated the same. Plaintiffs' Counsel calculated

23 each person's alleged unpaid overtime by giving everyone the same 2.5 hours of overtime per week

24 worked, using their individual payroll data reflecting when they worked for Defendant. Moreover,

25 as discussed below, fees and costs were negotiated separately at a discount from fees and costs

26 expended and to be expended. There is nothing to suggest that Plaintiffs' Counsel "allowed the

27 pursuit of their own self-interests and that of certain class members to infect the negotiation. *See*

28 *Seguin*, 2018 WL 1919823, at *5 (quotation omitted). While the settlement provides an incentive

1   award to the Named Plaintiff, that does not render it unfair, as the Ninth Circuit has recognized that

2   service awards to named plaintiffs are permissible and do not render a settlement unfair or

3   unreasonable.  *See Nen Thio*, 14 F. Supp. 3d at 1335.  This settlement is not a fraud on the Court or

4   public and is a favorable result that delivers back wages to sales employees, who absent this

5   settlement, likely would have received nothing.

6   **III.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES,**

7   **COSTS, NAMED PLAINTIFF SERVICE PAYMENT, AND CY PRES**

8        **A.    The Requested Attorneys' Fees are Reasonable.**

9        While Plaintiffs' Counsel have expended a total of $308,969.58 in attorneys' fees

10  ($286,009.90) and costs ($22,959.68) to date on this matter without being paid (Fisher Decl. ¶¶ 11–

11  12), Plaintiffs' Counsel only seeks a total of $190,345.84 in attorneys' fees ($167,386.16) and costs

12  ($22,959.68).  (*Id.* ¶ 11; *see* Settlement Agmt., Ex. 1.)[4]

13       With respect to fees, Plaintiffs seek approval of an award of $167,386.16.  While the parties

14  reached an agreement for the total settlement amount, the fees were negotiated separately, based off

15  Plaintiffs' Counsel lodestar, rather than a percentage of a common fund.[5]  *See Dahl v. Bay Power*

16  *Inc.*, 2021 WL 2313388, at * 3 (N.D. Cal. May 28, 2021) (approving settlement where fees were a

17  separate line item in negotiations and did not reduce the award amount to any plaintiff).  Importantly,

18  this fee award will not impact the allocations for Plaintiffs.  *See id.*  The fact that the fee requested is

19  larger than the amount allocated to clients does not deem it unreasonable; in fee-shifting cases like

20  this, the fees need not be proportional to the damages as the FLSA is a remedial statute designed to

21  protect the wages of workers.  *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing

22  that the FLSA's objective is ensuring every employee receives a "fair day's pay for a fair day's

23  _____

24  [4] This does not even include some additional time expended by the Ross Scalise Law Group finding
    and developing this case and participating in mediation and strategy discussions.  (Fisher Decl. ¶ 13.)

25  [5] Taken together, Plaintiffs' Counsel's attorneys' fees and costs sought ($190,345.84) are
    approximately 50% of the total settlement amount.  Even if evaluated under the common fund, courts

26  in the Ninth Circuit have approved fees and costs awards in similar ranges.  *See, e.g.*, *Amador v. City*

27  *of Ceres*, 2019 WL 935496, at *6 (E.D. Cal. Feb. 26, 2019) (fees and costs represented roughly 41%
    of the maximum settlement amount); *Dudley v. TrueCoverage LLC*, 2019 WL 3099661, at *6 (C.D.

28  Cal. Mar. 22, 2019) (fees and costs were 66% of the total settlement amount).

work); *Talavera*, 2020 WL 2195115, at *10 (collecting cases explaining that the FLSA's fee-shifting provision enables smaller claims to be litigated and guarantees employees are not prevented from asserting their rights even where their claims are small). As such, Plaintiffs respectfully request that the Court use the lodestar method to analyze the attorneys' fee award. *See Estorga v. Santa Clara Valley Transp. Auth.*, 2020 WL 7319356, at *7 (N.D. Cal. Dec. 11, 2020) (lodestar analysis was appropriate where attorneys' fees were to be paid separately from and in addition to the proposed settlement benefits to collective members).

"Where a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180. Typically, attorneys' fees under the FLSA are determined using the lodestar method. *Kerzich v. Cnty. of Tuolumne*, 335 F. Supp. 3d 1179, 1185–86 (E.D. Cal. 2018). Under that approach, a presumptively reasonable fee award is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Aguirre v. Custom Image Pros LLC*, 2023 WL 5932805, at *1 (D. Ariz. Sept. 12, 2023). "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Hanigan v. OpSec Sec., Inc.*, 2023 WL 6878762, at *2 (D. Idaho Oct. 18, 2023).

### 1.    Hours Reasonably Expended

"By and large the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Amsel v. Gerrard*, 2023 WL 2561153, at *5 (D. Nev. Mar. 17, 2023). The fee applicant bears the burden of documenting the appropriate number of hours through declarations and detailed time records. *Id.* In doing so, counsel must exercise proper "billing judgment" and a district court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Plaintiffs are represented by Counsel with extensive experience litigating FLSA actions. Fisher Decl. ¶ 9.) Nichols Kaster, PLLP has been advocating for employee rights for 50 years, with offices in Minneapolis and San Francisco. (*Id.*; Nichols Kaster PLLP Firm Resume, Ex. 4.) The firm employs 31 attorneys, and a dedicated staff of legal assistants, class action clerks, damages analysts, electronic discovery specialists, and information technology professionals to permit the firm to litigate class and collective actions. (Fisher Decl. ¶ 9.)

1   Legal work has been divided to avoid duplicity and work was performed by various team

2   members in a manner consistent with their skill level.  (*Id.* ¶ 10.)  Each timekeeper recorded their

3   time near contemporaneously in six-minute increments and with sufficient detail to identify the

4   nature of the work performed.  (*Id.*)  While Counsel is "not required to record in great detail how

5   much each minute of his time was expended … at least counsel should identify the general subject

6   matter of his time expenditures." *Hensley*, 461 U.S. 437 at n.12.

7   As of September 2, 2024, Nichols Kaster, PLLP has spent 769.32 hours on this case, but as

8   stated above, is only requesting payment for a portion of those hours expended.[6]  (Fisher Decl. ¶¶

9   11– 12.)  While the parties had not yet engaged in full discovery, Plaintiffs' Counsel spent significant

10   time investigating the claims, drafting the Complaint and filing the action, advertising the case to

11   potential clients to make them aware of their rights, communicating with clients, researching legal

12   issues, participating in the case management conference, drafting and serving discovery requests,

13   engaging in motion practice and attending hearings (including Defendant's Motion to Transfer

14   Venue, Plaintiffs' Motion for Judicial Notice (followed by the notice-distribution process), and

15   Plaintiffs' Motion for Corrective Judicial Notice), collecting and analyzing information and data to

16   prepare for and build a damages model for mediation, attending two mediations, negotiating a

17   settlement agreement, and drafting this motion.  (*Id.* ¶ 13.)  The time that Counsel dedicated to this

18   case ultimately resulted in a favorable settlement that all Plaintiffs accepted. These hours are

19   reasonable and should be approved.

20   ## 2.    Plaintiffs' Counsel's Hourly Rates Are Reasonable

21   Plaintiffs' Counsel's billing rates to calculate the lodestar are reasonable and should be

22   approved considering the complexity of collective action litigation, Counsel's experience, and the

23   recovery to Plaintiffs.  Plaintiffs' Counsel's rates have been approved by courts in this district and

24   align with those in similar wage and hour cases.  Partner Michele Fisher and associate Kayla Kienzle

25   were responsible for most of the attorney work on this matter and were assisted on occasion as needed

---

27   [6] The average hourly rate expended on this case by Nichols Kaster, PLLP attorneys and staff is $380;

28   using that, the fee request equates to approximately 440 hours.  (Fisher Decl. ¶ 12.)

1    by other Nichols Kaster, PLLP attorneys, three of whom are in the firm's California office (Helland,

2    Brome, and Mundh), and other from the Minneapolis office (Coleman).  (Fisher Decl. ¶ 14.)

3         As mentioned, Plaintiffs' Counsel are experienced and specialized class and collective action

4    lawyers, and as a result, they were able to litigate and settle the claims efficiently. Fisher is a

5    managing partner at Nichols Kaster, PLLP, has approximately 24 years of civil litigation experience

6    and a national practice concentrated in complex litigation and class and collective actions.  (Fisher

7    Decl. ¶ 15.)  Her billable rate is $700.  (*Id.*)  Fisher devotes time to giving back to the legal community

8    through numerous leadership roles and speaking engagements.  (*See id.*)  Fisher is named to The Best

9    Lawyers in America, Top 100 Super Lawyers, Top 50 Minnesota Woman Super Lawyers, and to

10   other top attorney lists.  (*Id.*)  She volunteers monthly as an attorney for two foster children through

11   the Children's Law Center.  (*Id.*)  She also created and administers arbitratorrater.com, a free resource

12   she developed exclusively for employee and consumer rights advocates, that is used by thousands of

13   attorneys across the country.  (*Id.*)

14        Kienzle, the associate who primarily worked on this matter, has been an attorney since 2018

15   representing workers in nationwide class/collective actions.  (Fisher Decl. ¶ 16.)  Her billable rate is

16   $400.  (*Id.*)  Kienzle has been active in outside legal organizations by contributing to the ABA Labor

17   and Employment Law Section's Fair Labor Standards Act Midwinter Report; as an Editor of the

18   ABA Labor & Employment Law Section's Newsletter Committee; and as a Co-Chair of the

19   Membership & Engagement Committee, Minnesota Women Lawyers.  (*Id.*)  She was also an Editor

20   to Minnesota Continuing Legal Education's Wage and Hour Handbook.  (*Id.*)

21        The billable rate of other attorneys who assisted occasionally are as follows: Helland (CA

22   partner; 2005 admission; rate $750), Brome (CA senior counsel; 2011 admission; rate $550),

23   Coleman (MN associate; 2018 admission; rate $400), and Mundh (CA associate; 2021 admission;

24   rate $425).  (*Id.* ¶ 17.)

25        Legal assistants/paralegals, case clerks, litigation support specialists, and damages clerks who

26   bill at $195 to $225 per hour also played an integral role in this case and its successful conclusion.

27   (*Id.* ¶ 18.)  If this work was not performed by staff, an attorney would have billed this work at a

28   higher rate.  *See Missouri v. Jenkins v. Agyei*, 491 U.S. 274, 288 (1989) ("[E]ncouraging the use of

1    lower cost paralegals rather than attorneys whenever possible . . . encourages cost-effective delivery

2    of legal services.") (quotation omitted).

3             Notably, this Court approved of the rates of Nichols Kaster, PLLP attorneys and staff in

4    *Bisaccia v. Revel Sys. Inc.*, finding that Counsel's 2019 rates of $175 for clerks and paralegals, $425

5    for attorneys, and $625 to $675 for partners "was reasonable and in line with prevailing rates in this

6    district for personnel of comparable experience, skill and reputation."  2019 WL 3220275, at *8

7    (N.D. Cal. July 17, 2019).  Counsel's rates are supported by the market and within the range of rates

8    for comparably experienced employment law attorneys and staff within this circuit and across the

9    country.  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates

10   from $650 to $1,250 for partners or senior counsel; $400 to $650 for associates); *In re Volkswagen*

11   *"Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar.

12   17, 2017) (billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and

13   $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result

14   achieved for the Class"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 262 (N.D. Cal. 2015)

15   (rates of $375 to $650 per hour for attorneys who practiced "almost exclusively in wage-and-hour

16   class actions" were reasonable); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal.

17   2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience

18   and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, 2012 WL

19   2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates

20   and between $490 and $695 per hour for senior counsel and partners).

21             Courts in the Northern District of California have also approved fee requests in similar cases

22   where Nichols Kaster, PLLP was counsel and the rates were similar to those here.  In *Kudatsky v.*

23   *Tyler Techs., Inc.*, the court conducted a lodestar cross check and found that fees ranging from $175

24   for non-lawyer hours, $575 for a partner, $450 for an associate, and $500 to $650 for other attorneys

25   compared "favorably to recent approvals" and weighed in favor of the attorneys' fees award.  2021

26   WL 5356724, at *5 (N.D. Cal. Nov. 17, 2021); *see also McCulloch v. Baker Hughes Inteq Drilling*

27   *Fluids, Inc.*, 2017 WL 5665848, at *8 (E.D. Cal. Nov. 27, 2017) (approving rates at that time of $525

28   for Michele Fisher and $350 for Brome).

Indeed, when compared to the prevailing rate charged by attorneys of similar skill who do nationwide class and collective action litigation, Plaintiffs' Counsel's rates are reasonable. *See Murphy v. City of El Cajon*, 2019 WL 3936143, at *7 (S.D. Cal. Aug. 18, 2019) (reasonable hourly rate is the prevailing rate charged by attorneys of similar skill in the relevant community); *Jeffcoat LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) (holding that it is appropriate to view a relevant community as a community of practitioners, particularly when "the subject matter of the litigation is one where the attorneys practicing are highly specialized and the market for the legal services in that area is a national market"); *see also Hose v. Wash. Inventory Serv.*, 2020 WL 3606404, at *8 (S.D. Cal. July 2, 2020) (approving rates for Scheider Wallace Cottrell Konecky Wotkyns LLP ranging up to $925 for FLSA and state law settlement); *Slaughter v. Sykes Enterprises*, 2019 WL 529512, at *7–8 (D. Colo. Feb. 11, 2019) (approving settlement with rates up to $950 for a partner, and up to $650 for counsel at Outten & Golden, a firm that does national wage and hour actions).

A survey of cases among various district courts demonstrates the "going rate" for similar work by the plaintiffs' bar handling FLSA collective actions. *See, e.g.*, *Kelley v. City of San Diego*, 2021 WL 424290, at *10 (S.D. Cal. Feb. 8, 2021) (citing cases approving rates between $500 to $875); *Lopez v. Mgmt. & Training Corp.*, 2020 WL 1911571, at *8 (S.D. Cal. Apr. 20, 2020) (calculating lodestar with rates for attorneys ranging from $900 to $500, and paralegals at $200 and $175); *Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *11–12 (W.D. Pa. Oct. 22, 2019) (seeking billable rates of $650 to $400); *Prim v. Ensign United States Drilling, Inc.*, 2019 WL 4751788, at *7–8 (D. Colo. Sep. 30, 2019) (noting billable rates of $675 and $600); *Bellinghausen*, 306 F.R.D. at 262 (rates of $375 to $650 for attorneys who practiced "almost exclusively in wage-and-hour class actions" were reasonable); *Rutti v. Lojack Corp.*, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) (noting billable rates of $750 and $650).

Finally, Plaintiffs' Counsel will continue to incur fees related to this approval motion (and hearing if required by the Court), answering Plaintiff inquiries, and distributing settlement checks. This additional work should be considered. *See Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) ("[W]here class counsel will be required to spend significant

16

additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement.") (quotations omitted); *Hernandez v. Merrill Lynch & Co., Inc.*, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (lodestar multiplier was reasonable as in wage and hour cases, class counsel is often called upon to perform work after the final approval hearing, including answering class member questions, questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund).

### B.    The Court Should Approve the Requested Costs.

The FLSA requires payment for prevailing Plaintiffs' fees and costs.  *See* 29 U.S.C. § 216(b). Plaintiffs' Counsel requests approval of $22,959.68 in costs. (*See* Fisher Decl. ¶ 20; Costs Detail, Ex. 5.)  Over half of these costs were for mediation ($9,895) and the notice administrator ($3,200). (Fisher Decl. ¶ 19; Costs Detail, Ex. 5.)  Other costs include service of process fees, filing fees, pro hac vice fees, advertising to alert plaintiffs to the case, document organization/storage fees, and legal research.  (*Id.*)  Counsel estimates additional costs for attendance at the approval hearing (if required), research and electronic document organization/storage fees, and administering the settlement, thereby making their costs exceed the amount requested.  *Id.*)  These costs were reasonably and necessarily incurred for Plaintiffs' benefit and are reasonable considering the settlement value and stage of the proceedings.  *See e.g.*, *Slezak*, 2017 WL 2688224, at *7–8 (costs reasonable where majority was spent on private mediator); *Nelson*, 2017 WL 733145, at *7 (approving $70,000 in costs for a settlement of $1,800,000, settled early in litigation); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 994, 999–00 (D. Minn. 2005) (reimbursing "expenses of photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel").

### C.    The Court Should Approve the Requested Service Payment.

Plaintiffs request the Court's approval of a service payment of $3,000 to Plaintiff Chalmers, which amounts to less than approximately .8% of the total settlement amount.  District courts have

17

1   discretion in deciding to award incentive payments to named plaintiffs in FLSA collective actions

2   to compensate them for work completed on behalf of the collective. *Talavera*, 2020 WL 2195115,

3   at \*10.  "In reviewing whether an incentive award is appropriate, the court should consider, among

4   other things, the actions the plaintiff has taken to protect the interests of the collective, the degree to

5   which the collective benefited from those actions, and the amount of time and effort the plaintiff

6   expended in pursuing the litigation." *Id.* (quotation omitted).  Such incentive awards are particularly

7   appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk by

8   bringing suit against his or her former employers.  *Id.*  In awarding a service payment, "district

9   courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*,

10  714 F.3d 1157, 1165 (9th Cir. 2013).

11       Plaintiff Chalmers brought this case as a collective action so that all those similarly situated

12  could benefit.  (Fisher Decl. ¶ 20.)  Without his valuable assistance and participation, this case likely

13  would not have been initiated.  Plaintiff Chalmers has been actively involved and provided key

14  information to counsel that assisted in investigating, filing, and litigating this case, and ultimately

15  in resolving it by attending two mediations and reviewing and approving settlement documents.

16  (*Id.*)  His assistance was especially important in positioning this case for settlement as the parties

17  had not exchanged formal discovery.  (*Id.*)  Notably, Plaintiff Chalmers took on this responsibility

18  despite the risk of stigma and reputational harm.  *See Deaver v. Compass Bank*, 2015 WL 8526982,

19  at \*15 (N.D. Cal. Dec. 11, 2015) (service award of $7,500 "is particularly appropriate in this wage

20  and hour class action, where Plaintiff undertook a significant 'reputational risk' in bringing this

21  action against her former employer."); *see also Rutti*, 2012 WL 3151077, at \*5–6 (citing research,

22  noting the "strong disincentives for employees to participate in a class action against their current

23  or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA").

24  Plaintiffs were informed of Plaintiff Chalmer's service award allocation when notified of the details

25  of the settlement and all approved of the settlement by signing a Release.

26       Further, Plaintiff Chalmers agreed to a general release of claims, which favors a larger

27  service award.  *See, e.g.*, *Selk*, 159 F. Supp. 3d at 1179 (consideration for broader release

28  appropriate); *Gong-Chun*, 2012 WL 2872788, at \*25 (general release of claims favors larger service

18

award).  If approved, the service award does not significantly reduce the funds available to Plaintiffs. *See Lusby v, GameStop Inc*, 2015 WL 1501095, at \*5 (N.D. Cal. Mar. 31, 2015) (approving $30,000 in enhancement awards out of a $750,000 settlement, or 4% of the total); *see also Nelson*, 2017 WL 733145, at \*2–8 (approving $100,000 in enhancement awards out of $1,800,000 settlement, or 5.5%).  Accordingly, the service payment should be approved.[7]

### D.    The Court Should Approve the *Cy Pres* Designee.

The settlement provides a process to ensure that Plaintiffs receive and cash their settlement checks.  However, should there be any remaining funds from uncashed settlement checks, any unused funds will be donated to Legal Aid Foundation of Los Angeles as *cy pres* beneficiary rather than reverting to Defendant.  Legal Aid Foundation of Los Angeles assists workers, with among other things, unpaid wages.   *See* https://lafla.org/get-help/#services (last visited Sept. 2, 2024). Accordingly, Legal Aid at Work satisfies the Ninth Circuit's standard that a *cy pres* recipient be guided by objectives underlying the statutes at issue.  *See Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, at \*6 (N.D. Cal. Apr. 26, 2013) (approving Legal Aid Foundation of Los Angeles as *cy pres* in wage and hour case alleging misclassification).

## CONCLUSION

This FLSA collective action settlement is a product of arm's-length negotiation between counsel for the parties and has resolved a bona fide dispute over FLSA coverage.  It provides all

---

[7] Indeed, California courts often approve service awards well above this amount.  *See Noroma v. Home Point Fin. Corp.*, 2019 WL 5788658, \*10 (N.D. Cal. Nov. 6, 2019) (awarding $10,000 incentive award where named plaintiff added substantial value, having been actively involved since the case was filed and participating with counsel to prepare the action and discuss settlement documents); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at \*4 (N.D. Cal. Oct. 18, 2019) (approving awards of $20,000 each for five named plaintiffs); *Nelson*, 2017 WL 733145, at \*7 (approving total awards of $10,000 to lead plaintiff and $5,000 for the other named plaintiffs); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at \*4 (E.D. Cal. Oct. 13, 2016) (approving $15,000 service payment for a $3,750,000 total settlement, with an average award of $2,616); *Galeener v. Source Refrigeration & HVAC, Inc.*, 2015 WL 12977077, at \*2 (N.D. Cal., Aug. 21, 2015) (service awards of $27,000, $25,000, $15,000, and $2,000 reasonable); *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at \*7 (C.D. Cal. Nov. 18, 2014) ($15,000 for class representative); *In re Pep Boys Overtime Actions*, 2008 WL 11343369, at \*3 (C.D. Cal. Nov. 12, 2008) ($20,000 for each of seven named plaintiffs).

participating Plaintiffs with monetary relief that represents a reasonable compromise of the parties' dispute. All Plaintiffs and their counsel believe the settlement to be fair and reasonable, and respectfully request that the Court find the same and approve their motion.


Dated: September 16, 2024                 **NICHOLS KASTER, PLLP**


                                By:      *Michele R. Fisher*

                                         *Attorney for Plaintiffs*

PLAINTIFFS' MOTION FOR APPROVAL OF FLSA SETTLEMENT 4:22-CV-08863-HSG