UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN CHALMERS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DSSV, INC.,<br><br>　　　　　　Defendant. | Case No. 22-cv-08863-HSG<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**<br><br>Re: Dkt. No. 122 |

Pending before the Court is Plaintiffs' unopposed motion for approval of a Fair Labor Standards Act ("FLSA") collective action settlement. Dkt. No. 122 ("Mot."). The Court held a hearing on the motion on October 24, 2024. For the following reasons, the Court **GRANTS** the motion for settlement approval.

## I. BACKGROUND

Plaintiff Jordan Chalmers ("Named Plaintiff") was an employee of Defendant and worked as an Inside Sales Representative for Defendant's business, which primarily sells preschool and childcare management software. Mot. at 9–10. Named Plaintiff brought this action as a collective action under the FLSA on behalf of himself and other current and former sales employees who worked for Defendant and who Defendant classified as exempt. *Id*. Plaintiffs allege that Defendant failed to pay non-exempt sales employees for overtime hours worked in a 40-hour workweek. *Id*. at 9.

On February 7, 2024, the Court authorized distribution of notice regarding this FLSA case to all Development Representatives, Inside Sales Representatives, and Account Executives who worked for Defendant at any time since February 7, 2021, and who Defendant classified as exempt from overtime pay. *See* Dkt. Nos. 80, 81. 63 individuals joined the case. Mot. at 10. On July 12, 2024, following private mediation with the Honorable Carla Woehrle (ret.), the parties reached

a finalized written settlement agreement ("Settlement Agreement" or "SA"). *Id.* at 11. The Plaintiffs received written notice of both the Settlement Agreement and their individual settlement payment amounts, as well as notice of the agreed-upon attorneys' fees and costs and the service award. *Id.* at 12. All 63 Plaintiffs agreed to the Settlement Agreement and signed the parties' Release of Claims form. *Id.* at 13.

## II. LEGAL STANDARD

The FLSA requires employers to pay their employees time and one-half for work exceeding forty hours per week. *See* 29 U.S.C. § 207(a)(1). Most courts hold that an employee's overtime claim under the FLSA is non-waivable, and therefore cannot be settled without the supervision of either the Secretary of Labor or a district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *Till v. Saks Inc.*, No. C 12-03903, 2014 WL 1230604, at *2 (N.D. Cal. Mar. 14, 2014); *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *3 & n.5 (N.D. Cal. Apr. 15, 2014) (collecting cases applying *Lynn's Food Stores*).

"The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015). For that reason, courts in this district apply the Eleventh Circuit's widely-followed standard set forth in *Lynn's Food Stores* and consider whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354.

## III. DISCUSSION

The settlement in this case includes the following terms:

Benefits: Defendant has agreed to pay Plaintiffs $186,654.16, which will be distributed based on the pro rata number of workweeks each Plaintiff worked for Defendant. Mot. at 11; SA § 1. Defendant provided payroll and employment data for Plaintiffs during the relevant period,

2

and the alleged underpayment of overtime wages was calculated based on this data. Mot. at 11. Each Plaintiff will receive 2.5 hours of overtime pay per week at a 1.5 overtime multiplier for each week they worked over the three-year statute of limitations period. *Id*. On average, each Plaintiff is allocated $3,010.38. *Id*. at 12.

Attorneys' Fees and Service Award: The Settlement Agreement provides $190,345.84 in attorneys' fees and costs to Plaintiffs' counsel and includes a $3,000 service award to Named Plaintiff. *Id*.

Release of Claims: Each Plaintiff has signed a Release of Claims Form, releasing:

> All claims, causes of action, theories, primary rights, and liabilities asserted in the Complaint in *Chalmers et al. v. DSSV, Inc., d/b/a Brightwheel*, Case No. 4:22-cv-08863-HSG (N.D. Cal.) from the period of December 15, 2019 through the date of approval of this settlement, as well as any claims, causes of action, theories, primary rights, or liabilities under any state, federal or local law that could have been asserted based on the same or substantially similar factual predicate as the claims alleged in the Complaint. SA § 6.

In order to approve the settlement, the Court must find that (1) the case involves a bona fide dispute, (2) the proposed settlement agreement is fair and reasonable, and (3) the award of fees and costs is reasonable.

**A. Bona Fide Dispute**

The Court first considers whether there is a bona fide dispute. "A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *De Bernardi v. City & Cnty. of San Francisco*, No. 18-CV-04597-HSG, 2021 WL 2207354, at *4 (N.D. Cal. June 1, 2021) (internal citation and quotation omitted). "The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Dahl v. Bay Power Inc.*, No. 20-CV-07062-HSG, 2021 WL 2313388, at *2 (N.D. Cal. May 28, 2021) (internal citation and quotations omitted).

Here, there is a bona fide dispute. Defendant disputes the merits of Plaintiffs' allegations

3

of failure to pay proper overtime wages and asserts several defenses, including that Named Plaintiff and others similarly situated were exempt from the FLSA's overtime protections under the administrative, outside sales, retail sales, and/or highly compensated exemptions. *See* Dkt. No. 47; Dkt. No. 122-1. Defendant further challenges Plaintiffs' weekly overtime estimate of 8.51 hours, asserting that Plaintiffs instead averaged closer to 0.5 hours of overtime per week. Mot. at 15. Finally, the parties dispute the applicable statute of limitations. "Ordinarily, a two-year statute of limitations applies to claims under the FLSA. But for a 'willful violation,' the limitations period extends to three years." *Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1102 (9th Cir. 2020) (internal citations omitted). Although the Settlement Agreement provides for a three-year statute of limitations period, Defendant argues that its actions were not willful or taken in bad faith. If Defendant showed its alleged violation was not willful, then the standard two-year statute of limitations would apply and would affect the settlement value. Based on these disputed aspects of the case, the Court finds there to be a bona fide dispute under the FLSA.

### B. Fair and Reasonable Resolution

The Court next considers whether the proposed settlement is fair and reasonable. In making this determination, courts consider the "totality of circumstances." *Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-CV-02668-BLF, 2020 WL 7319356, at *3 (N.D. Cal. Dec. 11, 2020) (internal citation and quotations omitted). And in looking to the totality of circumstances, courts balance the following factors: (1) the plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the Settlement Agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See*, *e.g.*, *id.*; *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).

    **i.**        **Plaintiffs' possible range of recovery**

"[C]ourts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable." *Estorga*, 2020 WL 7319356, at *4 (collecting cases). Here, Plaintiffs estimate that they would have been entitled to total damages

4

between $443,289.29 and $591,241.05. Mot. at 15. These estimates are based on Plaintiffs' assertions that they worked, on average, 8.51 hours of overtime per week over either a two- or three-year limitations period. *Id*. Since Defendant contends that Plaintiffs, on average, worked 0.5 overtime hours per week and that a two-year limitations period should apply, Defendant's estimates of Plaintiffs' total possible recovery are presumably much lower. *Id*. The Settlement Agreement, which provides $186,654.16 to Plaintiffs in an average payout of $3,010.38 represents 32% to 42% of the Plaintiffs' estimated total possible recovery, which is reasonable in light of the risks and costs of further litigation. *Id*. at 11–12; *Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019 WL 3220275, at *5 (N.D. Cal. July 17, 2019). Given (1) this percentage of recovery, (2) the Settlement Agreement's adoption of a three-year limitations period, (3) the risks of future litigation, and (4) Plaintiffs' concession that the Settlement Agreement "provides a fair recovery in a case where victory was uncertain," this factor weighs in favor of approval. *See Madrid v. teleNetwork Partners, LTD.*, No. 5:17-CV-04519-BLF, 2019 WL 3302812, at *4 (N.D. Cal. July 23, 2019).

### ii. The stage of proceedings and the amount of discovery conducted

Courts "assess[] the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Slezak*, 2017 WL 2688224, at *4 (internal citation and quotations omitted). "If the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval." *Id.* As previously noted, the parties reached the Settlement Agreement following private mediation with Judge Woehrle. Before mediation, Defendant provided Plaintiffs with payroll and time data, and Named Plaintiff supplied information about "sales employees' job duties and pay, Defendant's company and background, and Defendant's policies and procedures." Dkt. No. 122-1. Although the parties did not conduct formal discovery, the Court finds that the parties obtained and analyzed sufficient information relevant to the most pertinent issues to enable them to assess the likelihood of success on the merits. Accordingly, the Court finds this factor weighs in favor of approval.

//

### iii. The seriousness of the litigation risks faced by the parties

"Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all." *Estorga*, 2020 WL 7319356, at *5. Plaintiffs acknowledge that Defendant's possible liability for liquidated damages is uncertain and that both the amount of overtime hours that Plaintiffs averaged each week and the applicable statute of limitations are contested. *See* Mot. at 15. As previously noted, a finding regarding Defendant's alleged willfulness and lack of good faith could eliminate or significantly reduce Plaintiffs' recovery. Given the risk of a lesser recovery, or potentially no recovery at all, this factor weighs in favor of approval.

### iv. The scope of any release provision in the settlement agreement

Consistent with Ninth Circuit precedent, Plaintiffs' release does not extend to claims beyond the specific FLSA claims at issue in *Chalmers et al. v. DSSV, Inc., d/b/a Brightwheel* or those claims that could have been asserted in this case. Dkt. No. 122-2, Ex. B; Mot. at 17. *See Estorga*, 2020 WL 7319356, at *5. Since Plaintiffs' release is "tailored to cover the specific FLSA claims at issue," this factor weighs in favor of approval. *De Bernardi v. City & Cnty. of San Francisco*, 2021 WL 2207354, at *6. *See Slezak*, WL 2688224, at *4 ("A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself."); *Heath v. Google LLC*, No. 15-CV-01824-BLF, 2019 WL 3842075, at *6 (N.D. Cal. Aug. 15, 2019) (finding that a provision releasing "claims that Plaintiffs could have asserted in the instant action" weighed in favor of settlement approval).

Named Plaintiff signed a release of all claims "of every nature and description whatsoever, known or unknown" related to Defendant's acts or omissions prior to the Settlement Agreement's approval. Dkt. No. 122-2, Ex. C. Although this release goes beyond the FLSA claims at issue, the Court finds that it does not undermine the Settlement Agreement's fairness. Other courts in this Circuit have concluded that "broader releases are permissible, especially where, as here, [N]amed [P]laintiff receives additional compensation as a result of settlement." *Johnson v. Insulet Corp.*, No. 2:20-CV-05418-VAP-KESX, 2023 WL 11944334, at *6 (C.D. Cal. May 9, 2023); *see Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1179 (S.D. Cal. 2016) ("Courts are less

6

skeptical of a broad release of claims when the employee receives independent compensation from the employer as consideration for the release."). The Settlement Agreement provides Named Plaintiff with a $3,000 service award, which in part represents consideration for his broad release of claims. Mot. at 26; *Cf. McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012). And on the record at the hearing, Plaintiffs' counsel explained that she advised Named Plaintiff with respect to the general release and associated compensation, and she confirmed that he understood and supported the provision. Accordingly, the Court finds that Named Plaintiff's release of claims does not weigh against approval.

### v. The experience and views of counsel

Courts have taken divergent views on the weight to accord counsel's opinions. *See Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv-00060-HSG, 2017 WL 3670787, at *6 (N.D. Cal. Aug. 25, 2017) (internal citation and quotations omitted). Some have accorded counsel's opinion considerable weight, while others have been "reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved." *Id.* In light of this, the Court affords modest weight to counsel's views.

Plaintiffs' counsel has many years of experience litigating FLSA claims. *See* Mot. at 20. Plaintiffs' counsel asserts that the Settlement Agreement "provides a fair recovery" and that it represents "a good result for the FLSA collective." Mot. at 15, 18. Although this factor's impact is modest, the Court finds that it weighs in favor of approval.

### vi. The possibility of fraud or collusion

In assessing the terms of FLSA settlements, courts may consider the signs of collusion described in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). *See Estorga*, 2020 WL 7319356, at *6; *Jennings v. Open Door Mktg.*, LLC, No. 15-CV-04080-KAW, 2018 WL 4773057, at *8 (N.D. Cal. Oct. 3, 2018). Fraud or collusion may exist (1) "when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a

7

'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds," or (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947 (internal citations and quotations omitted). Additionally, courts consider whether a settlement was reached through "arm's-length negotiations, facilitated by an impartial mediator," which reduces the likelihood of fraud or collusion. *Slezak*, 2017 WL 2688224, at *5 (collecting cases).

The Court is satisfied that nothing suggests that the Settlement Agreement was reached through fraud or collusion. The parties reached the Settlement Agreement through "arms' length" negotiations and with the assistance of Judge Woehrle, indicating a lack of fraud or collusion. Mot. at 11. Moreover, as previously noted, the individual settlement amounts are based on the pro rata number of weeks that each Plaintiff worked for Defendant. SA § 1. While Defendant has agreed to pay attorneys' fees and costs, the amount ultimately awarded to Plaintiffs' counsel will not affect the amount allocated to Plaintiffs. *See Estorga*, 2020 WL 7319356, at *6 ("The fact that the requested fees do not reduce the amount of relief for each Plaintiff further indicates a lack of collusion."). Accordingly, this factor weighs in favor of approval.

Overall, considering the totality of the circumstances, the Court finds that the proposed settlement is a fair and reasonable resolution of a bona fide dispute.

**C. Attorneys' Fees, Costs, and Service Award**

Courts may award reasonable attorneys' fees and costs as part of a FLSA settlement. 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action"); *see Estorga*, 2020 WL 7319356, at *7. "Where a settlement produces a common fund for the benefit of the entire class, courts may employ either the lodestar method or percentage-of-recovery method to determine whether the attorney's fees are reasonable." *Estorga*, 2020 WL 7319356, at *7. Here, while the Settlement Agreement produces a common fund, the amount awarded to Plaintiffs' counsel in attorneys' fees will not diminish the amount of funds allocated to Plaintiffs. Mot. at 19; SA § 1. Accordingly, the Court will apply the lodestar method. *See Estorga*, 2020 WL 7319356, at *7. "Under the lodestar method, a lodestar figure is

8

calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer. [T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *De Bernardi*, 2022 WL 658828, at *7 (internal citations and quotations omitted).

Here, Plaintiffs' counsel seeks awards lower than the fees calculated using the lodestar method and below the value of the time actually spent. As of September 2, 2024, Plaintiffs' counsel spent a total of 769.32 hours on this case. Mot. at 21. They seek an award of $190,345.84 in attorneys' fees ($167,386.16) and costs ($22,959.68). *Id.* at 19. Having reviewed Plaintiffs' counsel's filings, the Court finds that the hours and rates are reasonable and generally in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation. *See Bisaccia*, 2019 WL 3220275, at *8.

Finally, the Settlement Agreement allocates $3,000 to Named Plaintiff as a service award. SA § 1. Named plaintiffs are eligible for "reasonable" incentive payments to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The Court finds that the proposed $3,000 service award is appropriate, particularly so because "Named Plaintiff undertook a significant reputational risk in bringing this action against [his] former employer." *Bisaccia*, 2019 WL 3220275, at *9 (internal citations and quotations omitted). Named Plaintiff also attended two mediations and, in the absence of formal discovery, the information that he provided was critical to reaching this agreement. *See* Mot. at 25–26. Moreover, the $3,000 payment is not disproportional to the average projected recovery of $3,010.38 for each individual Plaintiff. *Id*. at 12. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). Accordingly, the Court finds that the agreed-upon fees, costs, and service award amounts are reasonable.

## IV. CONCLUSION

The Court **GRANTS** Plaintiffs' unopposed motion for settlement approval. The Court **DIRECTS** the parties to perform their obligations in accordance with the terms of the Settlement Agreement. The Court further **DIRECTS** the parties to submit a status report within 40 days of the Settlement's "Effective Date," as defined in the Settlement Agreement. Simultaneously with that status report, the parties are **DIRECTED** to submit a stipulated judgment.

**IT IS SO ORDERED.**

Dated: 11/19/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge